JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Northeast Industries LLC, and Joseph DeLuca

**DEFENDANTS**

On Target Laboratories LLC; On Target Laboratories, Inc., and Martin R. Low

**(b)** County of Residence of First Listed Plaintiff    Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Peter N. Kessler, Kutak Rock LLP, 1760 Market Street, Suite 1100
Philadelphia, Pa. 19103 (215) 299-4384

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |    Liability   ☐ 367 Health Care/ |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel &    Pharmaceutical    Slander     Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) |    Liability   ☐ 368 Asbestos Personal ☐ 340 Marine     Injury Product ☐ 345 Marine Product     Liability | | ☐ 835 Patent - Abbreviated New Drug Application ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits |    Liability   **PERSONAL PROPERTY** ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract |    Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☒ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal     Property Damage    Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 362 Personal Injury -     Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters ☐ 895 Freedom of Information |
|  |    Medical Malpractice | ☐ 790 Other Labor Litigation | |    Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 |    Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/     Sentence | | |    State Statutes |
| ☐ 245 Tort Product Liability |    Accommodations   ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty    Employment    **Other:** | **IMMIGRATION** | | |
| | ☐ 446 Amer. w/Disabilities - ☐ 540 Mandamus & Other    Other     ☐ 550 Civil Rights | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | |
| | ☐ 448 Education    ☐ 555 Prison Condition      ☐ 560 Civil Detainee -       Conditions of       Confinement |    Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 USC §1836

Brief description of cause:
Misappropriation of trade secrets

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
10 - 10 - 2018

SIGNATURE OF ATTORNEY OF RECORD
*Peter N. Kessler*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

18cv4379

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: Northeast Industries LLC, 597 Brighton Way, Phoenixville, PA

Address of Defendant: _On Target Laboratories, LLC 1281 Win Hentschel Blvd., West Lafayette, IN 47906;

Place of Accident, Incident or Transaction: __Chester County, PA

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __10-10-2018__  _____  __209033__
Attorney-at-Law / Pro Se Plaintiff  Attorney I.D. # (if applicable)

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☒ 11. All other Federal Question Cases
   *(Please specify)* ____18 USC §1836____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
   *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___Peter N. Kessler_____, counsel of record or pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

OCT 10 2018

DATE: __10/10/2018__  _____  __209033__
Attorney-at-Law / Pro Se Plaintiff  Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | | |
|---|---|---|---|
| Northeast Industries  LLC and Joseph DeLuca ,   Plaintiffs, | : | CIVIL ACTION | |
| v. | : | | |
| On Target Laboratories, LLC, On Target Laboratories, Inc. and  Martin Low,   Defendants | : | NO. | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                           ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                       ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( X )


| 10/10/2018 | Peter N. Kessler | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-299-4384 | 215-981-0719 | peter.kessler@kutakrock.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

―――――――――――――――――――――――――――――

| | |
|---|---|
| NORTHEAST INDUSTRIES LLC, : | |
| and JOSEPH DELUCA, : | |
| : | CIVIL ACTION |
| Plaintiffs, : | |
| : | |
| v. : | NO.: 2:18-cv-_____ |
| : | |
| ON TARGET LABORATORIES LLC, : | |
| ON TARGET LABORATORIES INC., : | ***Jury Trial Demanded*** |
| and MARTIN LOW. : | |
| : | |
| Defendants. : | |

―――――――――――――――――――――――――――――

## <u>COMPLAINT</u>

Plaintiffs, Northeast Industries, LLC ("Northeast") and Joseph DeLuca ("DeLuca," and together with Northeast, "Plaintiffs"), by and through their undersigned counsel, hereby brings this Complaint against Defendants On Target Laboratories LLC ("On Target LLC"), On Target Laboratories Inc. ("On Target Inc." and together with On Target LLC, "On Target") and Martin Low ("Low," and together with On Target LLC and On Target Inc., "Defendants"), and in support thereof, say:

### Introduction

1.      Plaintiffs used their proprietary processes, skills, expertise, know-how and hard-won and secret list of contacts to aid Defendants in securing financing for the growth of their enterprise.  Under a written, signed contract negotiated with the Defendant CEO, Plaintiffs were to receive a bonus in connection with the successful consummation of financing.  However, now that at least one financing has closed, Defendants are refusing to bonus Plaintiffs, and are in fact disavowing the very existence of the contract itself.  Accordingly, Plaintiffs are bringing claims for misappropriation of trade secrets, unjust enrichment, and breach of contract.

**The Parties**

2.     Plaintiff Northeast Industries LLC is a registered Pennsylvania entity doing business out of 597 Brighton Way, Phoenixville, Pennsylvania.

3.     Plaintiff Joseph DeLuca ("DeLuca") is an adult individual residing at 597 Brighton Way, Phoenixville, Pennsylvania and is the Managing Member of Northeast Industries LLC.

4.     Defendant On Target Laboratories, LLC has been registered by Martin Low (manager) and remains registered as an Illinois LLC with an agent name of CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago IL, 60604, and in that capacity is also registered as an active foreign entity in the Commonwealth of Pennsylvania, with a service address of CT Corporation System in Dauphin County, but was also registered as a Delaware LLC with a principal office address located at 1281 Win Hentschel Blvd, West Lafayette, IN 47906.

5.     Defendant On Target Laboratories, Inc. is a Delaware corporation with a principal office located at 1281 Win Hentschel Blvd, West Lafayette, IN 47906, and a registered agent at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

6.     Defendant Martin R. Low is an adult individual residing at 1706 Kriebel Mill Road, Collegeville PA.   He is the CEO of On Target Laboratories Inc. and on information and belief a manager and member of On Target Laboratories LLC, and is registered as having an address at 1281 Win Hentschel Blvd, West Lafayette, IN 47906.

**Jurisdiction and Venue**

7.     This Court has subject matter jurisdiction of this lawsuit under 28 USC § 1331 insofar as the lawsuit involves a federal question arising under Section 18 U.S. Code § 1836.

8.     Venue in this District is proper under 28 U.S.C.A. §1391(b) in that at least one defendant resides here, and that several of the events giving rise to this claim occurred within the boundaries of this District.

**The Facts**

9.     Plaintiff Joseph DeLuca and Defendant Martin Low both attended college at Purdue, and subsequently met one another, some twenty years ago, at a networking event in Philadelphia.  They became friends and saw one another socially perhaps a few times a year thereafter.  Over the years Martin Low reached out to Joseph DeLuca as a sounding board for various business ventures in which he was involved, and for strategic advice, capital raising, networking contacts and technical expertise.  Such business ventures included the use of decorative roof tiles to generate solar power and the opening of an ice cream store in the Philadelphia area.

10.     Martin Low's brother, Philip Low, a scientist and chemistry professor at Purdue University, and a Board member of On Target, is located in Lafayette, Indiana.  Several years prior to 2015, Philip Low, with his brother Martin Low, founded "On Target."  That enterprise was founded for the purposes of commercializing certain molecules that Philip Low had created.  Those molecules could be used to locate and illuminate certain cancerous cells in the body, leading to a host of applications, including surgical applications.  Circa 2015, Martin Low turned to Joseph DeLuca to aid in marketing the company, developing partnerships, developing the business itself, and raising capital.

11.     Joseph DeLuca agreed to share with Martin Low and On Target his processes, know-how, and extensive network of contacts to help On Target develop its business, develop partnerships and to raise capital.  Joseph DeLuca and Martin Low, on behalf of On Target

Laboratories LLC, negotiated a Consulting Agreement by which Joseph DeLuca would be compensated (attached hereto at Exhibit 1).

12.     That Consulting Agreement, dated on or around May 2015, was entered into between on the one hand Plaintiff Northeast Industries LLC (as signed by its member, Plaintiff Joseph DeLuca), and on the other hand Defendant On Target Laboratories, LLC (as signed by its CEO, Martin Low).

13.     Among other provisions, the Consulting Agreement provided that Northeast Industries LLC would be bonused in the event of a financing in relevant part as follows:

> 4.      Bonus.  If Company closes a Financing with an Investor that Consultant introduces to Company, and Investor is not a Carved Out Investor (defined below), then the Company shall pay Consultant a Bonus equal to 3.0% of the aggregate amount of the Financing received by Company from the Investor.
>
> ***
> The terms of this Section 4 shall remain in effect for a period of 18 months following the end of the Term or 18 months following the date of Termination.

14.     Among other provisions, the Consulting Agreement created an exception to the bonus for Carved Out Investors, in relevant part as follows:

> 4.       . . . .
> Company shall have the right to carve out any Investors ("Carved Out Investor") by notifying Consultant, in writing, before Consultant contacts the Investor.

15.     Among other provisions, the Consulting Agreement provided for its own Term as follows:

> 2.      Term.  This Agreement shall commence as of the date hereof and will remain in place until terminated by either party, in writing, on 10 days' notice.

16.     Among other provisions, the Consulting Agreement provided for written termination in relevant part as follows:

> 8.     <u>Termination</u>.  Either party may terminate this Agreement and Consultant's services hereunder at any time upon the notice provided in Section 2 above, or immediately upon notice for good cause (in the reasonable judgment of the Company) which shall include, but not be limited to, Consultant's failure to fully and satisfactorily perform any of the duties and fulfill any of his obligations under this Agreement or the commission by Consultant of any gross or intentional act or omission which, in the judgment of the Company, materially and adversely affects the Company's interests.

17.     Believing himself under contract and operating with full knowledge of the On Target Board, DeLuca was instructed by Low to use his contacts and relationships to seek financing, develop partnerships, and develop the business.  In an email, dated May 27, 2015, Low wrote "…P.S.S. the more I though [sic] about it, the more I agree with you that we should cast as wide a net as possible  for funding sources and let the board tell us no.  The worst case scenario is that we are so targeted that we aren't successful.  At that point, Tom Hurvis has all the leverage and I'm probably looking for another job."  DeLuca through Northeast Industries, LLC shared with Low and On Target several key contacts he had, for the purposes of obtaining financing, developing strategic partnerships, recruiting Board members, recruiting Investment Banks, advancing the general knowledge and contact network of Low, and creating value for On Target, which lists of contacts were hard-earned and proprietary to DeLuca and Northeast Industries, and which contacts represented significant information built up by DeLuca and Northeast over a career. DeLuca also shared with Low and On Target his proprietary methodology and technique for positioning companies to seek and obtain financing, as well as his know-how and processes for obtaining financing, and further deployed his skills, know-how and proprietary expertise to generate materials for use by On Target and Low in marketing On Target to various financing

sources and prospective business partners, as well as communicating to the Board of On Target and its existing investors.

18.    DeLuca traveled to Indiana several times in connection with the pursuit of financing for On Target.  He spoke with and presented to various Board representatives throughout his work in service of On Target and developed presentations and strategy on behalf of On Target.  He visited Japan with Martin Low to meet with senior executives of Olympus Corporation to develop a strategic partnership between Olympus and On Target to use Olympus cameras and endoscopes in conjunction with On Target's molecules during surgical procedures.  He also visited California with Martin Low to meet with senior executives of Stryker Corporation, and met again with the same Stryker team in Philadelphia, to develop a similar strategic partnership. He dealt with Medtronic Corporation in Boston, Abbott Diagnostics in Chicago, and other medical device and pharma companies in pursuit of a potential business arrangement for On Target.  He shared his proprietary contacts, processes, know-how and methodologies with Defendants and generated work product incorporating same on behalf of Defendants.

19.    Throughout the course of his work for On Target, DeLuca was repeatedly lauded by Martin Low.  Martin Low repeatedly told him things like, "This is so helpful," and "I've talked to the Board about your help," and "I've talked to the Board about how much value you've added," and "I've told the Board we wouldn't be where we are without your help", and "I've talked to Philip about your work."  The impression Martin Low gave to Joseph DeLuca was that Martin Low was keeping the Board informed respecting Joseph DeLuca's contributions.

20.    It became apparent to DeLuca that On Target did not have a contact at J&J Innovations, a subsidiary of Johnson and Johnson, and would need to solicit funding from J&J Innovations directly.  As he wrote to Low on or about June 8, 2015, "Upon further research, I think

a good starting place at J&J might also be J&J Innovation.  That group's is [sic] purpose is to partner with entrepreneurs and fund companies.  I have a couple of contacts there, too, in addition to the CMO.  Let me know."  Low agreed with DeLuca, and asked DeLuca to bring his own contacts and influence to bear on J&J Innovation, and also with Johnson & Johnson contacts like Amrit Ray and Kareen Bacinski in order to ultimately obtain financing for On Target.

21.     DeLuca initiated the idea of contacting J&J Innovation and brought his proprietary contacts, influence, and understanding to bear.  J&J Innovations was not a "Carved Out Investor."

22.     Plaintiffs' efforts on behalf of Defendants were successful.

23.     In fact, J&J Innovation itself invested in On Target.  Purdue University issued a press release on or about November 1, 2017, stating:  "On Target Laboratories secures $40 million financing led by Johnson & Johnson Innovation – JJDC, Inc. (JJDC)."

24.     On or about December 19, 2017, DeLuca and Martin Low met for breakfast at the Collegeville Diner where Mr. Low informed him of the details of the closing of the financing for On Target.  Martin Low was effusive in his praise of Mr. DeLuca and of the many contributions of proprietary knowledge and contacts he had made.  Mr. Low stated, "We never would have gotten here without you."  He also said, "I talked with the Board, I told them that," and then he offered Mr. DeLuca $10,000 stemming from the financing.  Mr. Low said, "I tried to get you more, but I couldn't."

25.     Mr. DeLuca and Mr. Low had breakfast again on or about February 16, 2018.  They met at the Corner Bakery Café in King of Prussia.  At that meeting, Mr. DeLuca reminded Mr. Low that he had a contract with On Target, that he had used his know-how, processes and contacts to that end, and that he had been instrumental in bringing JJDC to the deal.  Mr. Low grew pale and said several things.  Among them, he said, "You're crazy if you think you're going to get

$600,000" and "That was not the spirit of the deal."  He also said, "I think I can do $75,000 so I don't need to involve the Board."

26.     Low also said, "I could lose my job over this.  I didn't talk to the Board."

27.     To which DeLuca responded, "You didn't talk to the Board about me?"

28.     To which Martin Low answered, "I didn't tell them you had a contract."

29.     Subsequently, Martin Low also commented, "I should have terminated the contract!"

30.     Subsequently, Martin Low also stated, "I can get you the money you're owed through my equity?"  He suggested that his equity would amount to a value of several million dollars and that 1-2 points of his equity for Mr. DeLuca would amount to a value of at least $500,000 - $600,000 or more over time.  Martin Low also stated, "That (equity) would be the easiest for me. I would still have a little mud on my face", and stated "What if I give you another consulting contract and you can get paid out over time?"

31.     In response, Mr. DeLuca insisted that Mr. Low inform the Board, and Mr. Low said he would show Fritz French, the Chairman of the Board, the DeLuca contract and would call DeLuca back.

32.     On February 20, 2018 Mr. Low called Mr. DeLuca back and said they wanted to do the right thing. Mr. Low said, "On the one hand we owe $500,000. But on the other hand what was the intent here."  Mr. Low also said it was "my bad", and said "I don't think you can get much more out of the Board without going to court", and also said "The best way to amicably handle it is to give you some of my shares."  Mr. Low then said he would try to "get Fritz (French, Chairman) to pay", and "Had we known how this had played out, neither one of us would have expected to owe you $500,000."

33.     Mr. Low then said, "If we go down this road, it will be over."  He also said, "We're done.  Don't ever call me again, don't ever talk to me again.  We're done."

34.     Mr. DeLuca was concerned that Mr. Low would not honor his stated intention to inform the Board.  Accordingly, he wrote board member Fritz French a letter on or about February 27, 2018.

35.     In response, Mr. DeLuca received back a letter from an attorney for On Target named A. Matthew Boxer of Lowenstein Sandler, dated March 14, 2018 ("Boxer Letter" attached hereto at Exhibit 2).  The Boxer Letter contained a few contradictions.

36.     First, the Boxer Letter appeared to invoke both Section 2 and Section 8 of the contract to effectuate a notice of cancellation of the contract as of March 14, 2018.

37.     Second, the Boxer Letter disavowed that any contract was ever in place at all, stating:  "The OTL board of directors never approved the Agreement."  As such, Defendants, through counsel, have asserted that the relationship between the parties was never governed by contract – and that Defendants, as such, have simply committed a wholesale theft of Mr. DeLuca's proprietary processes, skills, expertise, know-how and hard-won and secret list of contacts.

38.     The failure of Defendants to acknowledge the existence and validity of the contract gives rise to claims in the alternative that must be pursued in this action, not only against On Target and affiliated entities but also against Mr. Low.

**COUNT I**
**MISAPPROPRIATION OF TRADE SECRETS**
**(Section 18 U.S. Code § 1836)**
**(Plaintiffs v. Defendants)**

39.     Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

40. Plaintiffs were in possession of a proprietary list of contacts and a proprietary methodology and technique for developing companies and for positioning companies to seek and obtain partnerships and financing; as well as know-how and processes and proprietary expertise for developing companies and helping them to obtain financing.

41. Defendants by improper means induced Plaintiffs to reveal to them Plaintiffs' proprietary contacts, methodology, technique, know-how, processes and proprietary expertise and to use such proprietary contacts, methodology, technique, know-how, processes and proprietary expertise in Pennsylvania, Indiana, California, and other states, by improper means, including false promises to bonus Plaintiffs in the event any financing resulted.

42. Defendants knew that they were misappropriating Plaintiffs' trade secrets.

43. Accordingly, Defendants deliberately, knowingly and maliciously acted to misappropriate Plaintiffs' trade secrets, and induced Plaintiffs to gratis reveal their proprietary trade secrets, including Plaintiffs' proprietary contacts, methodology, technique, know-how, processes and proprietary expertise. Defendants did so willfully and maliciously, knowing that they would disavow any contractual or other responsibility to Plaintiffs for the misappropriation of such trade secrets.

44. Plaintiffs have been damaged thereby.

WHEREFORE, Plaintiffs Northeast Industries, LLC and Joseph DeLuca demand judgment in their favor and against Defendants On Target Laboratories LLC, On Target Laboratories Inc., and Martin Low in an amount to be determined at trial, plus pre-judgment and post-judgment interest, costs of suit, attorneys' fees, punitive damages, and for such other relief as the Court deems equitable and just.

## COUNT II
## UNJUST ENRICHMENT
### (Plaintiffs v. Defendants)

45.     Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

46.     Defendants Martin Low, On Target Laboratories LLC and On Target Laboratories Inc. solicited time, energy, and proprietary information and strategy from Joseph DeLuca and Northeast Industries, LLC for the purposes of obtaining financing, developing strategic partnerships, recruiting Board members, recruiting Investment Banks, advancing the general knowledge and contact network of Low, and creating value for On Target.

47.     Defendants Martin Low, On Target Laboratories LLC and On Target Laboratories obtained the value of time, energy, and proprietary information and strategy from Joseph DeLuca and Northeast Industries, LLC for the purposes of obtaining financing, developing strategic partnerships, recruiting Board members, recruiting Investment Banks, advancing the general knowledge and contact network of Low, and creating value for On Target and successfully obtained financing and created significant value for On Target and its owners.

48.     Defendants Martin Low, On Target Laboratories LLC and On Target Laboratories, having obtained and enjoyed the value of time, energy, and proprietary information and strategy from Joseph DeLuca and Northeast Industries, LLC for the purposes of obtaining financing, developing strategic partnerships, recruiting Board members, recruiting Investment Banks, advancing the general knowledge and contact network of Low, and creating value for On Target have now kept that benefit to themselves without properly compensating Joseph DeLuca and Northeast Industries, LLC.

49.     In aiding in the obtention of such financing, Plaintiffs Northeast Industries, LLC and Joseph DeLuca conferred a substantial benefit upon Defendants Martin Low, On Target Laboratories LLC and On Target Laboratories.

50.     Defendants Martin Low, On Target Laboratories LLC and On Target Laboratories caused Plaintiffs to believe the work that they did was pursuant to contract but have now disclaimed such contract.

51.     The keeping of benefits by Defendants Martin Low, On Target Laboratories LLC and On Target Laboratories without properly compensating Joseph DeLuca and Northeast Industries, LLC, is manifestly unjust.

52.     Whereby, each of Joseph DeLuca and Northeast Industries have been damaged.

WHEREFORE, Plaintiffs Northeast Industries, LLC and Joseph DeLuca demand judgment in their favor and against Defendants On Target Laboratories LLC, On Target Laboratories Inc., and Martin Low in an amount to be determined at trial, plus pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.

### COUNT III
### BREACH OF CONTRACT
### (Northeast Industries, LLC v. On Target Laboratories LLC)

53.     Plaintiffs incorporate herein by reference the allegations set forth in the foregoing paragraphs above as though set forth at length herein.

54.     In 2015, the parties entered into a contract providing for compensation of Northeast Industries, LLC in the event of a financing.

55.     At least one such financing has now occurred.

56.     Northeast Industries, LLC is entitled to all bonuses arising out of any and all successful financings as provided by the contract.

57.   On Target Laboratories LLC has refused to honor or even recognize the contract.

58.   Whereby, Northeast Industries has been damaged.

WHEREFORE, Plaintiff Northeast Industries, LLC demands judgment in its favor and against Defendant On Target Laboratories LLC in an amount to be determined at trial, plus pre-judgment and post-judgment interest, costs of suit, and for such other relief as the Court deems equitable and just.

### Jury Trial Demand

Plaintiff hereby demands trial by jury of eight (8) on all issues so triable.

Respectfully submitted by:

KUTAK ROCK LLP

By

Peter N. Kessler, Esquire
Oliver D. Griffin, Esquire
1760 Market Street, Suite 1100
Philadelphia, PA 19103
(215) 299-4384
(215) 981-0719 (fax)
Attorneys for Plaintiffs

Dated: October 10, 2018.

13

# EXHIBIT 1

## CONSULTING AGREEMENT

CONSULTING AGREEMENT dated as of May_____, 2015 between On Target Laboratories LLC ("Company"), and Northeast Industries LLC, ("Consultant").

WHEREAS, it is the mutual desire of the Company and the Consultant that the Consultant provide certain consulting services to the Company.

WHEREAS, the Company is planning to seek equity and/or debt capital to finance its ongoing operations ("Financing") from one or more individuals, financial institutions, or other sources ("Investors").

NOW, THEREFORE, in consideration of the mutual covenants herein contained the parties agree, intending to be legally bound, as follows:

1.   Services. Company retains Consultant and Consultant will provide consulting services to Company as described in Exhibit A attached to this Agreement, and on such other matters as the Company and Consultant may agree from time to time, upon the terms and conditions set forth below.

2.   Term. This Agreement shall commence as of the date hereof and will remain in place until terminated by either party, in writing, on 10 days' notice.

3.   Consulting Fee. For all duties described in Exhibit A, PART A rendered by Consultant hereunder, Company shall pay Consultant a fee equal to $300 per Consulting Hour, payable monthly in arrears. For purposes hereof, Consulting Hour shall mean an aggregate of one hour of time, tracked in 15 minute increments. Consultant shall submit to Company a timesheet detailing the date and Consulting Hours incurred.

4.   Bonus. If Company closes a Financing with an Investor that Consultant introduces to Company, and Investor is not a Carved Out Investor (defined below), then the Company shall pay Consultant a Bonus equal to 3.0% of the aggregate amount of the Financing received by Company from the Investor.

If for any reason, other than the liquidation or winding-up of the Company, the Company chooses to not close, or discontinues a Financing, in which Consultant has introduced Investors, regardless of whether Investors have delivered a Commitment to the Company, then a Bonus shall not be due and owing to Consultant, but Company shall pay Consultant a Consulting Fee pursuant to Section 3 for the Consulting Hours rendered by Consultant for services described in Exhibit A, PART B. Consultant shall submit to Company a timesheet detailing the date and Consulting Hours incurred.

The terms of this Section 4 shall remain in effect for a period of 18 months following the end of the Term or 18 months following the date of Termination.

Company shall have the right to carve out any Investors ("Carved Out Investor") by notifying Consultant, in writing, before Consultant contacts the Investor. If Company closes a Financing with an Investor and Investor is a Carved Out Investor, then the Consultant shall not be entitled to a Bonus, unless otherwise agreed by the Company and the Consultant.

The entire Bonus is due and payable to Consultant on the first to occur of (x) the date of the first closing or funding of the Financing, (y) the date the Company defaults on or violates any terms or conditions set forth in an accepted Commitment which prevents closing of the Financing, or (z) the date the Company elects to not accept a commitment or viable term sheet due to capital being provided instead by current Company shareholders, or the Company having sold a majority interest to another entity.

5.      Expense Reimbursement.  During the term hereof, the Company shall reimburse Consultant for all ordinary and necessary travel, lodging and related expenses incurred by Consultant with the prior approval of the Company in connection with the performance of services hereunder.   Such payments shall be made by the Company upon submission by Consultant of receipts itemizing such expenses in a form reasonably satisfactory to the Company.

6.      No Additional Benefits.  Consultant shall not be entitled to participate in any of the benefit, welfare, bonus or incentive plans maintained by the Company for its employees.

7.      Nondisclosure of Confidential Information Concerning Business.  In his capacity as Consultant, Consultant may acquire from the Company and/or develop for the Company information respecting inventions, products, designs, methods, know-how, techniques, systems, processes, software programs, other technical information, works of authorship, customer lists, financial information, operation, costs, business plans, projects, plans and proposals) which is considered proprietary and confidential in nature ("Confidential Information"), and Consultant will use all reasonable precautions to maintain the confidentiality of such Confidential Information and will not use for his personal benefit or the benefit of any other person, or publish or disclose to third parties, any such Confidential Information during the term of this Agreement or thereafter except in performing his duties under this Agreement. Consultant acknowledges that the Confidential Information is a special, valuable and unique asset of the Company.

8.      Termination. Either party may terminate this Agreement and Consultant's services hereunder at any time upon the notice provided in Section 2 above, or immediately upon notice for good cause (in the reasonable judgment of the Company) which shall include, but not be limited to, Consultant's failure to fully and satisfactorily perform any of the duties and fulfill any of his obligations under this Agreement or the commission by Consultant of any gross or intentional act or omission which, in the judgment of the Company, materially and adversely affects the Company's interests.  In the event of such termination, the only obligation or liability hereunder the Company shall have is to pay any accrued Consulting Fee, Bonus, or Expense Reimbursement owed to Consultant pursuant to this Agreement up to and including the date of termination.

9.    Notices.  Any notice pursuant to this Agreement shall be in writing and shall be deemed given if delivered personally or sent by guaranteed overnight delivery service or registered or certified mail to the following addresses:

If to Consultant:

Joe DeLuca
Northeast Industries LLC
597 Brighton Way
Phoenixville, PA  19460
484-431-3694


If to the Company:

Marty Low
On Target Laboratories LLC
1281 Win Hentschel Blvd.
West Lafayette, IN  47906
484-744-1500

or to such other addresses as either party may designate to the other in writing.

10.    Assignments.  Consultant shall not assign this agreement or subcontract any of the work, labor or services to be performed by Consultant hereunder without the Company's prior consent.

11.    Independent Contractor.  The parties agree that Consultant is an independent contractor for all purposes.  Consultant shall not be an employee or agent of the Company for any purpose, and Consultant shall have no power to bind the Company or assume any obligations or liabilities on behalf of the Company, nor shall Consultant represent to any person that Consultant has such authority or that Consultant is a partner, officer, director, employee or agent of the Company.

12.    Company Property.  All files, records, documents, and other materials relating to the business of the Company, whether prepared by Consultant or otherwise coming into his possession, shall remain the property of the Company during the term of this Agreement and thereafter.  Upon termination of this Agreement for any reason, Consultant shall promptly return to the Company or destroy all such materials and all copies thereof.

13.    Waiver.  The waiver by either party of a breach or violation of any provision of this Agreement shall not constitute or be construed as a waiver of any subsequent breach or violation of that provision or as a waiver of any breach or violation of any other provision.

3

14.     <u>Integration and Amendment</u>.  This Agreement contains the entire understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior communications and agreements.   This Agreement and the provisions hereof may not be changed, waived or extended orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, extension is sought.

15.     <u>Governing Law</u>.  This Agreement and all rights and obligations of the parties thereunder shall be governed by and be construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.  Consultant hereby consents to the jurisdiction of the courts of such commonwealth in any action or proceeding which may be brought against it under or in connection with this Agreement, and in the event any such action or proceeding shall be brought against it, Consultant agrees not to raise any objection to such jurisdiction or to the laying of the venue thereof in such state.

16.     <u>Severability</u>.  Any provision of this Agreement which is adjudged to be prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without affecting the validity or enforceability of the remainder of this Agreement.

17.     <u>Captions</u>.     Section captions in this Agreement are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

<u>Signature Page to Follow</u>

4

IN WITNESS WHEREOF, the parties have duly executed this Agreement on the date first written above.

Northeast Industries LLC

By: _____
Name:  Joe DeLuca
Title:  Member


On Target Laboratories LLC

By: _____
Name: Marty Low
Title: CEO

5

# EXHIBIT A
Services

## PART A

1. Assist the Company in the preparation of materials (collectively, "Documents") that include select business, technology, strategy and financial information about the Company to use in discussions with potential Investors.
2. Advise the Company in determining the proposed terms and conditions of the Financing.
3. If requested by the Company, work with and manage potential third-parties (including other personnel/finders, Investment Banks, Placement Agents) that the Company might engage.
4. Assist in the preparation of additional Documents providing such information and analyses as may be requested by Investors.
5. Assist the Company on other matters as requested.

## PART B

6. Introduce the Company to potential Investors.
7. Advise the Company regarding the structure and terms of letters of intent, term sheets, or other expressions of a Financing commitment ("Commitment") presented to Company by Investors.

# EXHIBIT 2



**A. Matthew Boxer**
Partner

1251 Avenue of the Americas
New York, New York 10020

T: 973.422.6454
F: 973.422.6455
E: mboxer@lowenstein.com

March 14, 2018

VIA FEDEX

Mr. Joseph DeLuca
Northeast Industries, LLC
597 Brighton Way
Phoenixville, PA  19460

**Re:     Consulting Agreement**

Dear Mr. DeLuca:

This firm is counsel to On Target Laboratories, Inc. ("OTL"). I am in receipt of your undated letter to OTL board chairman Fritz French, sent on or about February 27, 2018. In that letter, you contend that a May 2015 consulting agreement signed by you and Marty Low of OTL (the "Agreement") entitles you to a "Bonus" payment of $525,000 in connection with Johnson & Johnson's investment in OTL. Your letter was forwarded to me for response. Following an investigation into the relevant facts, we have determined that your contention is entirely without merit.

The terms of the Agreement itself make clear that you are not entitled to the Bonus payment you seek. The Agreement provides that you are to be paid on an hourly basis for duties you perform as set forth in Exhibit A to the Agreement, and documentation confirms that you were in fact paid hourly for your time. The Agreement further provides that you are to be paid an additional Bonus if OTL closes a financing with an investor that you "introduce" to OTL. That Bonus is to be equal to 3% of the amount of the financing in question and generally is to be paid upon the closing of the financing.

You claim in your letter to Mr. French that you introduced OTL to Johnson & Johnson ("J&J"), which later invested in OTL. However, following a review of the evidence, I can tell you that you did not "introduce" OTL to J&J under any reasonable interpretation of that word. To the contrary, OTL had been working with J&J on a potential investment years before the May 2015 Agreement was signed and years before your involvement on behalf of OTL. Representatives from the two sides had even met in person multiple times. There are, moreover, clear and

unambiguous emails reflecting the pre-Agreement dialogue between OTL and key J&J (and J&J subsidiary) personnel in the financing.

OTL board of directors materials dated February 2015 (months before the May 2015 Agreement) reference OTL's dialogue with J&J/Ethicon on these issues, noting that the J&J investment was in the "initial due diligence" stages. Multiple individuals from the J&J and OTL sides of the transaction are mentioned in OTL board materials, and yet there is no mention of you at all, which is no surprise in light of the facts set forth above.

In fact, when Marty Low emailed you in June 2015 to set the initial priorities for your work, he specifically noted that OTL already was in contact with J&J/Ethicon and he identified the key J&J players in the financing. You acknowledged as much in an email you sent to Marty shortly thereafter, noting, for example, "[G]ood news is that on trget is on ethicon's radar screen with the right person, which you already knew." While Marty invited you to participate in subsequent meetings with J&J and you did so, and while you may have had your own point of contact at J&J/Ethicon as well, that in no sense would indicate you "introduced" J&J to OTL.

Your own more recent conduct demonstrates that you recognize that you do not have a legitimate claim for a Bonus payment here. The J&J financing closed on September 30, 2017, and OTL issued its press release on November 1, 2017. Yet, you did not indicate any claim for a Bonus payment until months later in February of this year. Then, as our investigation revealed, when Marty Low challenged you about your claim and stated that you were not legally entitled to the Bonus payment, you did not argue otherwise to him. Instead, you talked about how much money is at issue here and how much money OTL's banker was paid.

It further appears that if you had played the role you claim in the J&J financing and if you were to be paid the 3% fee you seek, you would be in violation of, among other laws, Section 15 of the Securities Exchange Act of 1934, which provides that offers and sales of securities may be made only by a registered broker-dealer. The J&J financing included both equity and debt securities. As a knowledgeable member of the financial services industry, I am sure you are aware that bringing buyer and seller together in such a transaction and then receiving transaction-based compensation when the deal is consummated is the hallmark of broker-dealer activity. Some of your services specifically listed in Exhibit A to the Agreement are further indicia of broker-dealer activity. It appears that you are not registered as such, meaning that your conduct would be in violation of applicable law.

The OTL board of directors never approved the Agreement. To the extent it nonetheless is enforceable and has not previously been terminated, it is now hereby terminated in accordance with section 8 thereof. I trust that you will withdraw your payment demand so that we can close



March 14, 2018
Page 3

our file in this matter.  If you are represented by counsel in this matter, please forward this letter to him or her.

Very truly yours,

A. Matthew Boxer

MB:ls

cc:      Mr. Fritz French

32816/4
3/14/18 201890888.1

